Nat H. Hentel, J.
In this summary proceeding for nonpayment of business rent, petitioner claims tenant has not paid for the months of ¡March and April, 1974, at the rate of $530 per month, or a total of $1,060. Petitioner’s motion to amend petition to include May, 1974 rent of $530 is granted. Total arrearage of rent as of May 31,1974, is therefore $1,590.
Tenant’s first affirmative defense is that petition is “ jurisdictionally defective” without spelling out how it is defective. Orally argued, tenant’s claim is that petition is a nullity because it fails to comply with CPLR 3022, in that the caption of the proceeding shows petitioner to be “Maldon Buildings, Inc.”, and paragraph 1 thereof shows petitioner to be “ Herbert Nelbet authorized to institute and maintain this proceeding and is the agent in respect to the premises hereinafter described of Maldon Buildings, Inc., the owner and landlord of the premises. ’ ’ Ordinarily, any ambiguity as to the party instituting a summary proceeding, or a failure to identify properly the petitioner would be resolved in favor of tenant, and such defective petition would be dismissed.
However, the court in this instance fails to see how tenant has been harmed, duped, misled, or deprived of any of its statutory rights by such claimed defect. Mr. Nelbet, in fact, according to the testimony, is the president of the petitioning corporation, and is described as its “ managing agent ” in the verification of the petition, and that he so verifies on behalf of the corporation as an authorized officer. How has tenant been surprised or damaged by the wording of the petition? The question is rhetorical. Such a misnomer or misdescription of a petitioner is clearly amendable when tenant can easily recognize the identity of the real petitioner and has no reason to be confused thereby. (See Carmody-Wait 2d, New York Practice. §§ 19:11, 19:12.) Accordingly, tenant’s motion to dismiss peti *339 tion and its first affirmative defense is denied and dismissed respectively.
The court now need only consider tenant’s counterclaim of an offset of $1,060 in rent claimed under the terms of its lease. The proof shows that tenant entered into possession of Suites 401, 402 and 403 of 160-16 Jamaica Avenue, Jamaica, under a lease dated January 23,1970, for a term running from January 1, 1970 through December 31, 1974, at a monthly rental of $530. At the time, the landlord was described as Sixty Sixteen Building Corp., which it turns out was the lessee of the entire building owned by Rojam Realty Corp. Thus, tenant was, in effect, a sublessee. The lease is a standard printed Beal Estate Board of New York office form. Paragraph 30 reads: “ Tenant has deposited with landlord the sum ,of $1,590 as security [emphasis supplied] for the faithful performance and observance by tenant of the terms of the lease ”.
This printed clause is modified by paragraph 40 of the typewritten rider to the lease as follows: “It is agreed that at the end of the 24th month of this lease, one-third of the security on deposit herein will be returned to the tenant, at the end of the 37th month of this lease, an additional one-third of the security will be returned to the tenant and the last third will be used to pay for the 60th month of the lease.” (Emphasis supplied.)
Thereafter, Maldon Buildings, Inc. purchased the subject building from Rojam Realty Corp. on March 29,1973, and thereafter collected rent from tenant until March 1, 1974. The court notes that the 24th month of the lease ended on December 31, 1971, and that the 37th month of the lease ended on January 31, 1973, both of which critical dates preceded the closing date of title for the new and successor landlord petitioner. At the trial, petitioner concedes that tenant’s 60th month of rent commencing the month of December 1, 1974, has already been paid in advance under the terms of the lease. Thus, the only issue is whether the $1,0:60 represented by the lease credits for the 24th and 37th months are truly security lease funds, or are they advance payments of rent? It is clear that if the said credits are security funds, they do not “ run with the land,” and are indeed funds held by landlord to liquidate any damages caused by tenant and, as such, represent a personal indebtedness as between tenant and the Sixty Sixteen Building iCorp. and Bojam Bealty Corp. If the credits in question are advance payments of rent, then they “ run with the land,” and inure to the successor landlord petitioner as an obligation to be paid to tenant. (See 33 N. Y. Jur., Landlord and Tenant, § 89, pp. 392, 394, *340 citing Wertheimer v. Marks, 81 Misc. 137; Rasch, New York Landlord and Tenant [2d ed.], § 391, p. 496; 34 N. Y. Jur., Landlord and Tenant, § 341, p. 178. See, also, Walker v. 18th St. Holding Corp., 267 App. Div. 141.)
The proven facts can only determine what the nature of these funds is — whether security or advance rent. How did the parties themselves evidence their intentions with respect to the $1,590 deposit at or after the execution of the lease?
Of .course, paragraph 40 of the lease, supra, does not reserve any of the landlord’s rights to retain such funds as liquidated damages after the lease has expired. The funds are clearly payable back to tenant on the 24th, 37th and 60th months. This is of significance! Furthermore, the purchase of the building by petitioner was not an insubstantial matter. Petitioner was represented .by counsel, and the sale was for a sum in excess of $580,000. It is to be assumed that such a transaction would be made with the utmost care and attention to all details especially since petitioner was taking subject to the then existing tenancies of the building, and without any representations by the seller as to the rent rolls. This alone should have lit a warning red light for petitioner. Paragraph 31 of the contract of sale rider reads: ‘ ‘ Seller shall turn over to purchaser, at closing of title, tenants’ security deposits then being held .by seller ”. The seller, of course, was Bo jam Bealty ¡Corp., which had apparently retaken possession from its lessee, Sixty Sixteen Building 'Corp. The most significant piece of evidence is the schedule offf securities ”, purporting to .be a list of those tenants with security funds then on deposit which was furnished on a Sixty Sixteen Building iCorp. letterhead to Bo jam which, in turn, turned it over at the title closing to petitioner. Tenant is not listed thereon as a tenant with security funds on deposit. This is also significant as to the attitude of the parties regarding the $1,590 in question.
To make the cheese more binding, the court notes paragraph 32 of the printed form lease which reads: “ in the event of any sale or sales of said land or .building or of said lease * * *
the said landlord shall ,be and hereby is entirely freed and relieved of all covenants and obligations of landlord hereunder, and it shall be deemed and construed .without further agreement between the parties or their successors in interest * * * that the purchaser or the lessee of the building, or of the land and building * * * has assumed and agreed to carry out any and all covenants and obligations of landlord hereunder (Emphasis supplied.)
*341 What could be more convincing than these facts? The court clearly is of the opinion that the funds involved are not and never were considered to be security funds as such under the lease, and were merely advance payments or applications of credit towards the full rental for the four-year term of the lease. As such, these funds “ run with the land”, and are now a current obligation of petitioner since tenant has claimed same as an offset to its arrearages.
Accordingly, judgment for tenant on the counterclaim; and judgment for petitioner to the extent only of $530 for the May, 1974 rent to be paid within 10 days of service of a copy of this decision upon it. Tenant is allowed the $1,060 representing the 24th cmd 37th months of credit towards the payment of the March and April, 1974 rent.